UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY EUGENE SNELL,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Criminal Case No. 16-20222-6

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**ORDER GRANTING PETITIONER'S MOTION FOR COMPASSIONATE RELEASE [399]**

On April 8, 2020, Jeffrey Eugene Snell filed a Motion for Compassionate Release [399] from his incarceration at Federal Correctional Institution ("FCI") Milan. On May 7, 2020, the parties filed concurrent responses [404] [406]. The Court held oral argument on the motion on May 14, 2020. After the hearing, the Court ordered the parties to provide supplemental records. (ECF No. 412). On May 29, 2020, the Government submitted Snell's supplemental medical and prison records as well as a supplemental brief. (ECF No. 422, 423). On June 1, 2020, the Court held a follow-up hearing. For the reasons stated below and on the record, the Court **GRANTS** Snell's Motion for Compassionate Release [399].

## FACTUAL BACKGROUND

On December 11, 2017, the Court sentenced Mr. Snell to a mandatory 60 months (5 years) of imprisonment for Conspiracy to Distribute and Possess With Intent to Distribute Heroin in violation of 21 U.S.C. §§841(b)(1)(B) 846. (ECF No. 318, PageID. 1581-82). His current release date is August 8, 2022. *See* Probation Memorandum (May 29, 2020).

Snell is 56 years old. After complaining of body aches, a cough, and a fever of 102 Fahrenheit, he tested positive for the COVID-19 virus on April 11, 2020. (ECF No. 407, PageID. 3074, 3082). He was then placed in medical isolation and monitored for several days. During this time, Snell experienced mild to moderate flu like symptoms. (*See e.g.* ECF No. 407, PageID. 3068). His lungs remained clear and his temperature lowered to a normal 98.9 Fahrenheit on April 14, 2020. (ECF No. 407, PageID. 3064). He has since been discharged from isolation.

Because Snell already contracted, and has largely recovered from, the COVID-19 virus, his main health concern is the strain the pandemic has placed on his access to medical care. Snell has congenital spina bifida. (ECF No. 404-5, PageID. 3001-06). As a consequence of his condition, Snell's bladder is paralyzed, which requires him to self-catheter several times a day in order to urinate. (*Id.*) Since his incarceration, Mr. Snell has contracted several urinary tract infections ("UTI").

In fact, his medical records indicate that he has had at least 7 UTIs since 2018, the most recent of which was treated on May 18, 2020, causing him to become increasingly immune to antibiotics. (ECF No. 423-1, PageID. 3287; 423-2, PageID. 3342, 3345, 3366; 423-3, PageID. 3493, 3500). He claims that his infections are caused by the prison's failure to provide sanitary medical supplies to safely self-catheter such as surgical gloves, clean catheters, proper lubrication and a clean environment.

Upon the Court's request, the Government forwarded Snell's Letter to the Court [400] to FCI Milan's warden as a request for compassionate release. (ECF No. 422, PageID. 3278). On May 18, 2020, the warden denied the request, claiming that Snell did not meet the criteria under the statute. (ECF No. 422-2, PageID. 3283).

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

There is no dispute that Snell has exhausted his administrative remedies. The Court thus has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Snell poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Snell, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is--

Page **4** of **9**

> **(I)** suffering from a serious physical or medical condition,
> **(II)** suffering from a serious functional or cognitive impairment, or
> **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
> [. . .]
>
> **(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Snell has presented "Other Reasons" to warrant compassionate release, specifically his medical condition "that substantially diminishes [his] ability . . . to provide self-care . . . he is not expected to recover," which is exacerbated by FCI Milan's inability to provide him with adequate medical care. *Id.*

Snell suffers from a birth defect that requires constant care. The Court was made aware of this at sentencing and advised the BOP to place Snell in a medical facility so that he could receive the care he needs. Nevertheless, Snell is now housed at FCI Milan, which is not a medical facility. Robust health systems outside of prison have been overwhelmed by the current pandemic, so much more so is the strain on an already under resourced BOP facility that is not designed to provide acute medical care *en masse.* Accordingly, what little medical resources FCI Milan has are now being funneled to COVID-19 patients, leaving inmates with chronic conditions, like

Snell, more vulnerable to deterioration or infection. Snell has already had several UTIs and each new infection increases his immunity to antibiotics. He averages a UTI every couple of months — at this rate, without intervention, he could develop sepsis which "can lead to multi-organ dysfunction, failure, and even death." Avital Porat et. al., *Urosepsis*. STATPEARLS (Feb. 4, 2020) https://www.ncbi.nlm.nih.gov/books/NBK482344.

Additionally, 20 inmates and staff members are currently positive with COVID-19 at FCI Milan. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 13, 2020). Three inmates have died, and 109 inmates and staff members have recovered. *Id.* Although he has already contracted COVID-19, seeing that is a novel virus, researchers cannot definitively conclude whether Snell could contract it again. William Park, *Can you catch Covid-19 twice?*, BBC (Apr. 22, 2020), https://www.bbc.com/future/article/20200421-will-we-ever-be-immune-to-covid-19 ("Immunity to Covid-19 is not as clear cut as we might hope"). Snell will not be a guinea pig to test this possibility. The Court finds that because FCI Milan is not a conducive facility for Snell's health, both in regards to the virus and his underlying condition, extraordinary and compelling reasons exist for his release.

2. <u>Danger to the Community</u>

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Court finds that Snell's conduct in prison indicates that he presents a low risk of recidivism. In over two years in prison, Snell has only had one disciplinary incident for attempting to have a three-way phone conversation. *See* Probation Memorandum (May 29, 2020). Furthermore, Snell has earned his GED in prison and participated in "54 hours of educational and vocational programs including; Reading, Money Smart, Employment, Parenting, and Personal Growth." *Id.*

Snell claims that he has taken responsibility for his crimes and upon release will reside with his mother in Detroit and continue his employment at Fiat Chrysler, where he has worked in the paint department since 2013. (ECF No. 404, PageID. 2845). At the time of sentencing, the Union's President at Chrysler vouched for Snell's dedication to his work and good character. (ECF No. 404-6, PageID. 3010). Probation has recently confirmed with a union representative that Snell will be allowed to return to work upon his release, allowing him to access a steady income and healthcare coverage. *See* Probation Memorandum (May 29, 2020). Considering

the willingness of his family and employer to take him in and support his reentry, the Court sees no reason why he cannot serve the remainder of his sentence at home.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the June 1, 2020 hearing. Snell's crimes were serious, but the quality of his time in prison has shown that he has the educational and correctional tools to live a life apart from crime. Finally, the

potential danger of Snell's medical conditions outweigh any marginal benefit he would receive from finishing his remaining time in prison. A sentence reduction to time-served is therefore in line with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Petitioner's Motion for Compassion Release [399] is **GRANTED**.

**IT IS FURTHER ORDERED** that Snell be **IMMEDIATELY RELEASED** to begin his 4-year term of **SUPERVISED RELEASE**, as outlined by the December 18, 2017 Judgment (ECF No. 318), including the following Special Condition:

> **HOME CONFINEMENT**: **You are restricted to your residence at all times, except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the officer (home detention). The participant shall be monitored by location monitoring technology at the discretion of the officer for a period of 90 days and shall abide by all technology requirements. The participant shall pay the costs of participation in the location monitoring program.**

**SO ORDERED**.

Dated: June 2, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge